IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 3:23cr122 (RCY) |
| | ) | |
| DENNIS ZELEDON HERNANDEZ, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Dennis Zeledon Hernandez's ("Mr. Zeledon")
Rule 29 Motion for Judgment of Acquittal on Count II of the Indictment ("Motion for Judgment
of Acquittal on Count II" or "Motion").  Mr. Zeledon argues that the Government failed to establish
an essential element of its case against him on Count II:  that Mr. Zeledon was in "custody . . . for
exclusion or expulsion proceedings under the immigration laws" of the United States.  For the
following reasons, the Court will grant the Motion.

**I.  RELEVANT PROCEDURAL HISTORY**

On September 20, 2023, a federal grand jury indicted Mr. Zeledon, charging him with two
counts:  Count I, felony Obstruction of Agency Proceedings, in violation of 18 U.S.C. § 1505; and
Count II, misdemeanor Escape, in violation of 18 U.S.C. § 751(a).  Indictment, ECF No. 15.  On
October 26, 2023, Mr. Zeledon filed a "Motion to Dismiss Count One of the Indictment for Failure
to State an Offense, or in the Alternative Under the Double Jeopardy Clause."  ECF No. 24
("Motion to Dismiss Count I").  After full briefing, *see* ECF Nos. 27, 31, and oral argument, *see*
ECF No. 35, the Court denied the Motion to Dismiss Count I, *see* ECF Nos. 37, 38.

Following Mr. Zeledon's knowing and voluntary waiver of a trial by jury, *see* ECF No. 67,
the Court conducted a bench trial on the charges in this case on June 10, 2024.  At the conclusion

of the Government's evidence and case, counsel for Mr. Zeledon made an oral motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure as to both Counts I and II.  ECF No. 75.  By counsel's account, the Rule 29 motion as to Count I was merely to preserve the legal arguments raised in the Motion to Dismiss Count I, and so the Court denied the Rule 29 motion as to Count I based on its reasoning in denying the Motion to Dismiss Count I.  *See id.*  As to Mr. Zeledon's Rule 29 Motion for Judgment of Acquittal on Count II, however, because Mr. Zeledon sought to raise new legal arguments, the Court deferred ruling and indicated that it would have the parties brief the legal issues.  *See id.*  Mr. Zeledon did not put on any evidence.  *Id.*  The Court found Mr. Zeledon guilty as to Count I.  *Id.*  The Court deferred a finding of guilt as to Count II pending full briefing on Mr. Zeledon's Motion for Judgment of Acquittal on Count II and issued a briefing schedule.  ECF No. 76.

Mr. Zeledon filed his opening brief in support of his Motion for Judgment of Acquittal on Count II on June 21, 2024.  ECF No. 79 ("Def.'s Br.").  The Government filed its opposition brief on June 28, 2024.  ECF No. 80 ("Gov't's Resp.").  After receiving a briefing extension, ECF No. 83, Mr. Zeledon filed his reply brief, ECF No. 82 ("Def.'s Reply").  This Opinion follows.

## II.  FACTUAL BACKGROUND

These facts are drawn from the evidence adduced by the Government at the June 10, 2024 bench trial.  The Government has proven these facts beyond a reasonable doubt.

Mr. Zeledon is from El Salvador.  His experience with the United States immigration system began in July 2016, when Immigration and Customs Enforcement ("ICE") officials encountered him at the southern border, near Hidalgo, Texas.  At that time, Mr. Zeledon claimed fear of returning to El Salvador, and an asylum officer found that he had preliminarily demonstrated a credible fear of persecution in his home country.  ICE officials personally served

Mr. Zeledon with a Notice to Appear that included the following warning:

> Failure to appear:  You are required to provide the [Department of Homeland Security ("DHS")], in writing, with your full mailing address . . . .  Notices of hearing will be mailed to this address.  . . . If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

ICE is a part of DHS.  Mr. Zeledon was in ICE custody until his bond hearing on September 13, 2016.  An immigration judge of the Executive Office for Immigration Review ("EOIR"), part of the Department of Justice, ordered Mr. Zeledon released on bond.  The immigration judge also issued a notice that included another warning, similar to the one above, that Mr. Zeledon maintain an updated mailing address with DHS, and that if he failed to appear at his hearing, the presiding immigration judge could order Mr. Zeledon removed *in absentia*.

On October 13, 2016, Mr. Zeledon filed a motion for change of venue with the EOIR Immigration Court, asking that his proceedings be transferred to Virginia.  Mr. Zeledon informed the Immigration Court that his address was on Jan Rae Circle in Williamsburg, Virginia.  On October 27, 2017, Mr. Zeledon submitted a change of address form informing the Immigration Court that he had changed his address from Jan Rae Circle in Williamsburg, Virginia, to Merrimac Trail in Williamsburg, Virginia.  In May 2018, the Immigration Court sent a Notice of Hearing by mail to Mr. Zeledon's Merrimac Trail address, which served to notify Mr. Zeledon of his "master hearing" in Immigration Court on December 9, 2019, in Arlington, Virginia.  Mr. Zeledon also made a phone call to an Immigration Court hotline that informed him of the date, time, and location of his master hearing on December 9, 2019, in Arlington, Virginia.  Thus, Mr. Zeledon had actual knowledge of his master hearing.  Nevertheless, he failed to appear at that December 9, 2019 hearing, and the Immigration Court ordered him removed *in absentia*.

Between December 2019 and May 2023, Mr. Zeledon lived in the United States as a fugitive subject to a removal order.  At no point during this period did Mr. Zeledon seek relief from or contact the Immigration Court or ICE.

On May 14, 2023, Mr. Zeledon was arrested in York, Virginia on state charges for driving under the influence, carrying a concealed weapon, and child neglect.  ICE officials received notice that Mr. Zeledon had been arrested on state charges and issued a Warrant of Removal, resulting in Mr. Zeledon's transfer to the Caroline Detention Facility ("CDF") in Bowling Green, Virginia under ICE custody on May 17, 2023.  The CDF is a detention facility contracted with ICE to detain noncitizens who are subject to removal orders, and it is within the Eastern District of Virginia. Upon Mr. Zeledon's transfer to the CDF, he entered federal custody under ICE's authority to detain noncitizens subject to orders of removal.

As part of the process for booking Mr. Zeledon into ICE custody, an ICE officer presented a form titled "Warning for Failure to Depart."  The ICE officer speaks Spanish fluently, and his practice is to explain such forms to Spanish-speaking noncitizens in their native language.  The form notified Mr. Zeledon that failing to comply with his removal order could subject him to criminal penalties.  The form specifically, and solely, quoted and cited "Section 243(a) of the Immigration and Nationality Act," which is formally codified at 8 U.S.C. § 1253(a) and labeled "Penalty for failure to depart."

ICE scheduled Mr. Zeledon to be transferred from the CDF to an ICE staging facility in Alexandria, Louisiana on May 23, 2023.[1]  Mr. Zeledon retained an immigration attorney, and on May 23, 2023, the attorney contacted ICE officials requesting they stay Mr. Zeledon's transfer to

---

[1] ICE detainees scheduled for removal to El Salvador are typically sent to Alexandria, Louisiana several days prior to their final deportation.

4

Alexandria, Louisiana, because he planned to seek emergency relief from the Immigration Court on Mr. Zeledon's behalf. ICE officials agreed to delay Mr. Zeledon's transfer as a courtesy. By the morning of May 30, 2023, Mr. Zeledon's attorney had not yet filed his emergency motion, so ICE officials transferred Mr. Zeledon from the CDF to Alexandria, Louisiana by plane. Later that day, however, Mr. Zeledon's attorney filed an "Emergency Motion to Rescind in Absentia Removal Order and Reopen Removal Proceedings Based on Lack of Notice" ("Emergency Motion to Reopen"), arguing that the removal order was defective because Mr. Zeledon did not receive proper notice of his master hearing. ICE officials then transferred Mr. Zeledon back to the CDF, where he arrived on June 6, 2023, while his Emergency Motion to Reopen was pending.

An immigration judge denied Mr. Zeledon's Emergency Motion to Reopen on June 13, 2023. Mr. Zeledon had 30 days to appeal the denial of his Motion to Reopen to the Board of Immigration Appeals ("BIA"), *see* 8 C.F.R. § 1003.38(b), giving him until July 13, 2023, to appeal. Following this denial but during the window for appeal, ICE officials scheduled Mr. Zeledon for transfer to Alexandria, Louisiana on July 3, 2023, where he would stay until his planned removal to El Salvador on July 12, 2023. Mr. Zeledon did not appeal the Immigration Court's denial of his Emergency Motion to Reopen to the BIA.

On July 2, 2023, the day before he was to be transferred to Alexandria, Louisiana, Mr. Zeledon escaped from the CDF. Mr. Zeledon exited a building within the facility at around 3:30 p.m., ran across a field, scaled a fence using sheets he had knotted to serve as a rope, and climbed onto the roof of the CDF's Administration Building. He ran across the roof to where its edge met a public parking lot, jumped to the ground, and ran across the parking lot into the nearby woods. At the time of his escape, Mr. Zeledon knew about his Immigration Court proceedings, the fact that he was subject to a final removal order, and DHS's and ICE's proceedings relating to

effectuating his removal from the United States.  Moreover, at the time of his escape, Mr. Zeledon knew he did not have permission to leave federal custody.

After Mr. Zeledon escaped from the CDF, he walked for two or three days until he met a Spanish-speaking man in a parking lot outside of a restaurant.  The man allowed Mr. Zeledon to use his cell phone, which Mr. Zeledon used to call his friend who lived in North Carolina.  Mr. Zeledon's friend agreed to travel to pick up Mr. Zeledon and take him to North Carolina.  Over 100 members of law enforcement, including state, local, and federal officials, participated in the fugitive search for Mr. Zeledon.  Law enforcement received information—from a source other than Mr. Zeledon—that Mr. Zeledon had traveled to Durham, North Carolina, nearly 200 miles away from the CDF.  On July 7, 2023, members of the U.S. Marshals Task Force arrested Mr. Zeledon in an apartment complex in Durham, North Carolina, and he entered the U.S. Marshals' custody pending this criminal case.  Mr. Zeledon never made an effort to surrender to authorities after he escaped from the CDF.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 29 requires a district court, on the defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  "The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt."  *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982).

## IV.  DISCUSSION

The overarching question before the Court is whether a jury could find that Mr. Zeledon has violated 18 U.S.C. § 751(a).  In full, § 751(a) provides:

6

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 751(a).  This breaks down into four elements that the Government must prove: (1) the defendant was in custody; (2) the basis for the defendant's custody is one of those enumerated in the statute; (3) the defendant left custody without permission; and (4) the defendant knew he did not have permission to leave custody.  *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 407 (1980); *United States v. Evans*, 159 F.3d 908, 910 (4th Cir. 1998).

Mr. Zeledon contests only whether the Government has proven § 751(a)'s second element, that Mr. Zeledon was in custody for an enumerated basis.  The Government "must prove one of the [five] enumerated bases for the escapee's federal custody" to sustain a conviction under § 751(a).  *United States v. Rosa-Ortiz*, 348 F.3d 33, 37 (1st Cir. 2003) (collecting cases, *inter alia*, *Evans*, 159 F.3d at 910); *accord United States v. Vanover*, 888 F.2d 1117, 1121 (6th Cir. 1989) ("Section 751(a) provides that a defendant must be in custody for one of five reasons for a violation to occur."); *United States v. Richardson*, 687 F.2d 952, 954–62 (7th Cir. 1982) (discussing § 751(a) and its history at length).  "Custody must either be (1) based on an 'arrest on a charge of felony,' (2) based on a 'conviction of any offense,' (3) 'for extradition,' (4) 'for exclusion or expulsion proceedings under the immigration laws,' or (5) 'by virtue of an arrest or charge of or for a

misdemeanor.'" *Vanover*, 888 F.2d at 1121 (quoting 18 U.S.C. § 751(a)).[2]  This prosecution rests on the fourth enumerated basis for custody.  Indictment 3, ¶ 10, ECF No. 15 (alleging in relevant part that Mr. Zeledon "did knowingly and intentionally escape from . . . custody . . . in connection with ongoing proceedings for exclusion or expulsion under the immigration laws of the United States").  The Government has proven that Mr. Zeledon escaped from ICE custody while he was being held awaiting the execution of a final order of removal issued by an immigration judge.  The operative question on the present motion is thus whether, as a legal matter, such an escape amounts to an "escape[]" from "custody or confinement . . . for exclusion or expulsion proceedings under the immigration laws" under § 751(a).

Mr. Zeledon argues that he did not violate § 751(a) as charged when he escaped, because being in custody for the execution of a final removal order is not being in "custody . . . for exclusion or expulsion proceedings under the immigration laws."  *See* Def.'s Br. 2–10, ECF No. 79.  Mr. Zeledon makes two textual arguments.  First, he argues that he could not have been in "custody . . . for *exclusion or expulsion* proceedings" under § 751(a), because he went through *removal* proceedings.  *Id.* at 4–7.  Mr. Zeledon says that those forms of proceeding are legally distinct in a way that absolves him of § 751(a) guilt on these facts.  *See id.*; Def.'s Reply 1–5, ECF No. 82.  Second, Mr. Zeledon argues that, even if "exclusion or expulsion" in § 751(a) is effectively synonymous with "removal," he still was not in "custody . . . for . . . *proceedings* under the immigration laws" covered by § 751(a).  *See* Def.'s Br. at 2–3, 7–10.  This argument rests on the fact that when Mr. Zeledon escaped, the only thing he was still being held for was the execution

---

[2] The Government must prove the specific basis for custody because the criminal penalties for escape differ depending on why the defendant was in custody:  If a defendant escapes while in custody for reasons (1) or (2), the escape is a felony with harsher penalties, but if a defendant escapes while in custody for reasons (3), (4), or (5), the escape is a misdemeanor with lesser penalties.  *Rosa-Ortiz*, 348 F.3d at 37 & n.7; *Vanover*, 888 F.2d at 1121; *Richardson*, 687 F.2d at 954–62.

of the final removal order (given that his Emergency Motion to Reopen had been denied and he had not appealed that denial). *Id*. Mr. Zeledon accordingly posits that the execution of a removal order is legally distinct from "proceedings under the immigration laws." *See id.*; Def.'s Reply 5.

The Government disagrees. First, the Government (correctly) does not contest that Mr. Zeledon went through removal proceedings, but the Government argues that "exclusion or expulsion" in § 751(a) is interchangeable with "removal." Gov't's Resp. 3–6, ECF No. 80. So, the Government necessarily takes the position that § 751(a) should be read to proscribe escapes from "custody . . . for [removal] proceedings under the immigration laws." *See id.* The Government next argues that any contention from Mr. Zeledon that the execution of a removal order is not among covered "proceedings under the immigration laws" under § 751(a) is foreclosed by this Court's opinion on Mr. Zeledon's Motion to Dismiss Count I in this case. *See id.* at 6–8. There, this Court held that the execution of a removal order by DHS, through ICE, counts as a "proceeding" within the meaning of 18 U.S.C. § 1505. *See United States v. Zeledon Hernandez*, 2024 WL 23147, at *2–6 (E.D. Va. Jan. 2, 2024). The Government recycles the winning interpretative arguments from the § 1505 context and presses them here, reasserting that the execution of a removal order is a covered "proceeding[]" under § 751(a). *See* Gov't's Resp. 6–8.

As the Court sees it, both sides are half-right. The Court agrees with the Government that "exclusion or expulsion proceedings" in 18 U.S.C. § 751(a) includes Mr. Zeledon's removal proceedings. This conclusion notwithstanding, the Court agrees with Mr. Zeledon that the execution of a final order of removal is not among the "proceedings under the immigration laws" contemplated in § 751(a). Therefore, the Government has failed to prove that, when Mr. Zeledon escaped from custody while being held only for the execution of his final removal order, Mr.

Zeledon escaped from "custody . . . for exclusion or expulsion [or removal] proceedings under the immigration laws."  18 U.S.C. § 751(a).

## A.  "Exclusion or Expulsion Proceedings"

The first question the Court must answer is whether 18 U.S.C. § 751(a)'s reference to "exclusion or expulsion proceedings" includes removal proceedings.  The Court finds that it does.

This question revolves around the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104–208, 110 Stat. 3009 (1996).  "Before [the] IIRIRA's passage, United States immigration law established 'two types of proceedings in which [noncitizens[3]] can be denied the hospitality of the United States:  deportation hearings and exclusion hearings.'"  *Vartelas v. Holder*, 566 U.S. 257, 261 (2012) (quoting *Landon v. Plasencia*, 459 U.S. 21, 25 (1982)).  The Supreme Court understood the terms "deportation" and "expulsion" to be synonymous; so, pre-IIRIRA, the "distinction [was] between 'deportation' or 'expulsion,' on the one hand, and 'exclusion,' on the other."  *See Sale v. Haitian Cts. Council, Inc.*, 509 U.S. 155, 175, 180 (1993).  The fundamental difference between "exclusion" and "deportation"/"expulsion" was that "[e]xclusion hearings were held for certain [noncitizens] seeking entry to the United States, and deportation[/expulsion] hearings were held for certain [noncitizens] who had already entered this country."  *Vartelas*, 566 U.S. at 261 (citing *Landon*, 459 U.S. at 25).  Among other nuances, differences also existed in "the statutory bases for excluding and deporting" noncitizens and in "the ability of the Attorney General to grant [a noncitizen] discretionary relief" across the two types of cases.  *Judulang v. Holder*, 565 U.S. 42, 46 (2011).

---

[3] The Court uses the term "noncitizen" as an equivalent for the term "alien" (as that term is used in statutes, regulations, and judicial opinions).  *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

"In [the] IIRIRA, Congress abolished the distinction between exclusion and deportation[/expulsion] procedures and created a uniform proceeding known as 'removal.'" *Vartelas*, 566 U.S. at 262 (citing 8 U.S.C. §§ 1229, 1229a; and citing *Judulang*, 565 U.S. at 46).[4] To do this, the IIRIRA amended the immigration laws. *See, e.g.*, *United States v. Lopez-Gonzalez*, 183 F.3d 933, 934 & n.4 (9th Cir. 1999); *United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998). Most relevant here, IIRIRA § 309(d)(2) broadly provides that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation."

The parties disagree on what to make of IIRIRA § 309(d)(2) and, in turn, what it means for 18 U.S.C. § 751(a). The parties agree that IIRIRA § 309(d)(2) retrofits the word "removal" in statutes to include the old terms of "exclusion" and "deportation"/"expulsion." But they disagree on if IIRIRA § 309(d)(2) updates the old terms in statutes to the new term, "removal."

Mr. Zeledon contends that IIRIRA § 309(d)(2) "mandates that references to *removal* include exclusion and deportation, but pointedly does not mandate that the reverse is true." Def.'s Br. 4. So, in his view, IIRIRA § 309(d)(2) "goes one way—'removal' in a statute includes both new-law removals and old-law exclusions and deportations; but references to exclusion or deportation do not self-update to refer to removals." *Id.*; *see* Def.'s Reply 4–5. Therefore, Mr.

---

[4] The Supreme Court provided the following in *Judulang*, by way of background:

> [T]he statutory bases for excluding and deporting [noncitizens] [still] var[y]. Now, as before, the immigration laws provide two separate lists of substantive grounds, principally involving criminal offenses, for these two actions. One list specifies what kinds of crime render [a noncitizen] excludable (or in the term the statute now uses, "inadmissible"), . . . while another—sometimes overlapping and sometimes divergent—list specifies what kinds of crime render [a noncitizen] deportable from the country . . . .

565 U.S. at 46 (citing 8 U.S.C. § 1182(a), and then citing 8 U.S.C. § 1227(a)). Mr. Zeledon was charged with inadmissibility, under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *See* Def.'s Br. 6–7 (including picture of Mr. Zeledon's Notice to Appear, which references "Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act" (codified at 8 U.S.C. § 1182)).

Zeledon says, "exclusion or expulsion proceedings under the immigration laws" in 18 U.S.C. § 751(a) "refers to pre-IIRIRA proceedings," and not Mr. Zeledon's post-IIRIRA removal proceedings.  Def.'s Br. at 6.

The Government argues that IIRIRA § 309(d)(2) goes both ways.  In the Government's view, § 309(d)(2) both makes "removal" in statutes cover old "exclusions" and "deportations"/ "expulsions," and makes the old terms in statutes apply to modern-day "removals."  *See* Gov't's Resp. 3–5.  The Government proceeds:  "[18 U.S.C.] § 751(a) expressly adopts the definition of 'exclusion or expulsion' proceedings from 'the immigration laws'"; the "'immigration laws' plainly include [I]IRIRA § 309(d)(2), and its command to treat 'exclusion or expulsion' as interchangeable with 'removal' proceedings"; and, therefore, § 751(a)'s reference "to 'exclusion or deportation proceedings under the immigration laws' continues to apply to modern-day removal proceedings."  *Id.* at 4–5.  In essence, the Government's view is that § 751(a) can and should be read to punish escapes from "custody . . . for [removal] proceedings under the immigration laws."  *See id.* at 4–6.

Mr. Zeledon's one-way application position is foreclosed by Supreme Court and Fourth Circuit precedent, and the Court must therefore find for the Government on this issue.  In *Nasrallah v. Barr*, the Supreme Court accepted the parties' argument that 8 U.S.C. § 1101(a)(47)(A)'s definition of "order of deportation" has been effectively updated by the IIRIRA to constitute a definition of "order of removal," and the Court included a citation to IIRIRA § 309(d)(2) in so accepting that proposition.  590 U.S. 573, 579 (2020).  The Fourth Circuit came to the same conclusion in *Martinez v. Garland*, 86 F.4th 561 (4th Cir. 2023), recognizing that "[a]lthough [8 U.S.C. § 1101(a)(47)(A)] defines 'order of *deportation*,'" *id*. at 566 n.2 (emphasis added), the text was constructively updated by the IIRIRA and therefore provided an applicable definition for the

12

(new) term "order of *removal*," *id*. (emphasis added) (quoting IIRIRA § 309(d)(2)) (citing *Salgado v. Garland*, 69 F.4th 179, 182 n.2 (4th Cir. 2023)).   Reading this precedent in line with (1) the fact that IIRIRA § 309(d)(2) references both "deportation and exclusion," and (2) the Supreme Court's recognition that the terms "deportation" and "expulsion" are synonymous, *Sale*, 509 U.S. at 175, 180, the Court concludes that § 309(d)(2) equally updates the other old terms "exclusion" and "expulsion."

Finding it settled that IIRIRA § 309(d)(2) commands updating the old terms—"exclusion" and "deportation"/"expulsion"—to incorporate the new term "removal" in the context of the immigration laws, the Court has not been provided with a compelling reason to think § 309(d)(2) does not have that same impact on 18 U.S.C. § 751(a).   Section 751(a) specifically references "exclusion or expulsion proceedings *under the immigration laws*."   18 U.S.C. § 751(a) (emphasis added).   "[T]he immigration laws," *id.*, include (among many others) IIRIRA § 309.[5]   And, IIRIRA

---

[5] Mr. Zeledon cites "a well-worn canon of statutory interpretation" that he says "confirms" his (now-rejected) one-way understanding of IIRIRA § 309(d)(2), and § 309(d)(2)'s (lack of, he says) impact on 18 U.S.C. § 751(a). *See* Def.'s Br. 6.   In arguing that "no statute updates" § 751(a)'s "exclusion or expulsion" "reference to include post-IIRIRA removal proceedings," Mr. Zeledon quotes the following passage from the Supreme Court's decision in *Hassett v. Welch*, 303 U.S. 303 (1938):

> Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute . . . Such adoption takes the statute as it exists at the time of adoption and *does not include subsequent additions or modifications [by] the statute so taken* unless it does so by express intent.

Def.'s Br. 6 (emphasis in brief) (alternation in brief) (quoting *Hassett*, 303 U.S. at 314).   Mr. Zeledon adds that "[t]he *Hassett* canon has been continuously in use and cited as recently as 2017 in the Fourth Circuit with approval." Def.'s Br. 6 (citing *Toghill v. Clarke*, 877 F.3d 547, 561 (2017)).

The Court finds that Mr. Zeledon's reliance on "[t]he *Hassett* canon" is misplaced in the context of § 751(a)'s "exclusion and expulsion proceedings under the immigration laws" phrase.   By its terms, this canon only provides guidance when a statute makes "a specific and descriptive reference to the statute or provisions adopted." *Hassett*, 303 U.S. at 314.   Indeed, the Fourth Circuit in *Toghill v. Clarke* was interpreting a statute of conviction that explicitly incorporated the specific code section of another statute, which triggered the *Hassett* canon to aid in interpreting the statute of conviction. *See Toghill*, 877 F.3d at 550, 561 (interpreting Va. Code § 18.2-374.3(C)(3), which prohibited solicitation of "any act constituting an offense under § 18.2-361").   Section 751(a) does not make a "specific and descriptive reference" to any specific statutory provision; it just generally refers to "the immigration laws." 18 U.S.C. § 751(a).   That is outside of *Hassett*'s ambit.   *Cf. Nasrallah*, 590 U.S. at 579 (applying—contrary to Mr. Zeledon's would-be application of *Hassett*, here—IIRIRA § 309(d)(2) to modify 8 U.S.C. § 1101(a)(47)(A) in defining a "final order of removal").

§ 309(d)(2) speaks of "any reference in law," which would include references in 18 U.S.C. § 751(a).  Further, since the IIRIRA, Congress has not altered § 751(a).[6]  So, nothing § 751(a)-specific post-IIRIRA gives the Court the inclination that the IIRIRA's command, as the Court understands it, does not apply to § 751(a)'s "exclusion or expulsion proceedings" language.

For these reasons, the Court agrees with the Government that 18 U.S.C. § 751(a)'s reference to "exclusion or expulsion proceedings under the immigration laws" is synonymous with "[removal] proceedings under the immigration laws."  In other words, § 751(a) continues to apply to modern-day "proceedings under the immigration laws."  The Court therefore cannot say that the fact that Mr. Zeledon went through so-called removal proceedings—rather than so-called exclusion or expulsion (deportation) proceedings—by itself, takes his custody outside of § 751(a)'s covered basis of "custody . . . for exclusion or expulsion proceedings under the immigration laws."

## B.  "Proceedings Under the Immigration Laws"

Having concluded that 18 U.S.C. § 751(a)'s reference to "exclusion or expulsion proceedings under the immigration laws" can be read as "[removal] proceedings under the immigration laws," the Court turns its attention to the back part of that phrase.  The question now is whether the Government has proven that Mr. Zeledon was in "custody . . . for . . . proceedings under the immigration laws."  18 U.S.C. § 751(a).

On these facts, the answer to this question hinges on whether the execution of a final order of removal is one of the "proceedings under the immigration laws" contemplated in § 751(a).  Looking to how the term "proceeding[]" is used in "the immigration laws," Mr. Zeledon argues

---

[6] Congress first enacted § 751(a) in 1948, *see* c. 645, 62 Stat. 734, and amended § 751(a) to add the "for exclusion or expulsion proceedings under the immigration laws" custody basis in 1988, *see* Pub. L. 100-690, Title VII, § 7055, Nov. 18, 1988, 102 Stat. 4402.  Most recently, pre-IIRIRA, Congress updated § 751(a) in 1994, streamlining language regarding fines for violations of the statute.  *See* Pub. L. 103-322, Title XXXIII, § 330016(1)(H), (K), Sept. 13, 1994, 108 Stat. 2147.  But there have been no changes after the IIRIRA.

that the execution of a removal order is not a § 751(a) "proceeding[]." *See* Def.'s Br. 2–3, 7–10. Mr. Zeledon says that "proceedings" in § 751(a) only includes "the process required for making a decision about removability." *Id.* at 8. The Government (again, leaning on the arguments that worked in the § 1505 context) argues that "the execution of a Court order qualifies as part of the 'proceeding' that resulted in that order," and so § 751(a)'s mention of "proceedings" must include the execution of an immigration judge's removal order. Gov't Resp. 7. So, in the Government's view, Mr. Zeledon's "conce[ssion that] he was in custody for the execution of his removal order . . . is enough to find him guilty of Count Two." *Id*. Mr. Zeledon, in reply, pushes back on the Government's reliance on this Court's prior ruling, noting that he is raising "specific arguments as to § 751 that apply to the peculiarity of that statute," and that "the Court's previous determination under a different statute" does not foreclose his instant arguments. Def.'s Reply 5.

In this context, the Court agrees with Mr. Zeledon. As explained in detail below, the Court's prior interpretation of the word "proceeding" in the context of 18 U.S.C. § 1505 does not obviate the need for an independent interpretation of the term "proceedings" as it appears in 18 U.S.C. § 751(a). And, upon engaging in that independent interpretive analysis, the Court ultimately agrees with Mr. Zeledon's reading of the term. Therefore, because the only thing Mr. Zeledon was in "custody . . . for" when he escaped was the execution of a removal order, the Government has not proven the essential element that Mr. Zeledon was in "custody . . . for exclusion or expulsion [or removal] proceedings under the immigration laws" under § 751(a).

1. <u>This Court's Prior Interpretation of "Proceeding" in 18 U.S.C. § 1505 Does Not Control the Interpretation of "Proceedings" in 18 U.S.C. § 751(a)</u>

In his Motion to Dismiss Count I, Mr. Zeledon argued that DHS's and ICE's execution of a removal order is not a "proceeding" within the meaning of 18 U.S.C. § 1505.[7] In that statutory

---

[7] Section 1505 makes it a crime to "corruptly . . . influence[], obstruct[], or impede[] or endeavor[] to

context, the Court disagreed with Mr. Zeledon and held that obstructing the execution of a removal order could indeed qualify as the "obstruct[ion]" of "any pending proceeding" outlawed by § 1505. The Government contends that this Court's analysis of the word "proceeding" in the § 1505 context necessarily forecloses Mr. Zeledon's instant arguments with respect to the meaning of the word "proceedings" in the context of 18 U.S.C. § 751(a).  The Court disagrees.

As this Court explained at length in its prior Memorandum Opinion, 18 U.S.C. § 1505 uses the term "proceeding" "broad[ly]," in a manner that "accords with the dictionary definition of the term."  *See United States v. Zeledon Hernandez*, 2024 WL 23147, at *3 (E.D. Va. Jan. 2, 2024) (citing, *inter alia*, *Rice v. United States*, 356 F.2d 709, 712 (8th Cir. 1966)).  The Court subsequently concluded that "the execution" of a removal order is a "proceeding" of an Immigration Court removal "action" when the term "proceeding" is used in its broad, dictionary sense.  *See id.* at *4 (quoting *Proceeding*, Black's Law Dictionary (11th ed. 2019)).  But, that conclusion does not mean that the execution of a removal order will always qualify as a "proceeding," wherever the word "proceeding" is used.  And, importantly, the fact that § 1505 uses "proceeding" in its broad, dictionary-definitional sense does not mean that § 751(a) necessarily uses "proceeding[]" in that same way.

Courts "do not . . . construe the meaning of statutory terms in a vacuum."  *Tyler v. Cain*, 533 U.S. 656, 662 (2001).  Rather, courts must interpret particular terms "in their context and with a view to their place in the overall statutory scheme."  *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989).  Many times, faithful interpretation of a term leads to the conclusion that that term takes its dictionary definition (a conclusion which may raise nested questions over competing

---

influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States . . . ."  18 U.S.C. § 1505.

dictionary definitions); but other times, a look to the direct and broad context commands the conclusion that a term does not take its dictionary definition. *See Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion of Ginsburg, J., joined by Roberts, C.J., and Breyer and Sotomayor, JJ.) ("Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things."); *id.* at 555 (Kagan, J., joined by Scalia, Kennedy, and Thomas, JJ., dissenting) ("I agree with the plurality (really, who doesn't?) that context matters in interpreting statutes. . . . And sometimes that means, as the plurality says, that the dictionary definition of a disputed term cannot control." (citing *Bloate v. United States*, 559 U.S. 196, 205 n.9 (2010))); *cf. United States v. Ermoian*, 752 F.3d 1165, 1169–70 (9th Cir. 2013), *as amended* (Aug. 28, 2013) (discussing broader and narrower dictionary definitions for the word "proceeding" in the context of interpreting "any official proceeding" in 18 U.S.C. § 1512 and choosing the latter in that case).

Performing the appropriate context-specific examination, *see Yates*, 574 U.S. at 537 (plurality opinion); *id.* at 555 (Kagan, J., dissenting), the Court easily concludes that "proceeding" as used in § 1505 and "proceeding[]" as used in § 751(a) are not twins. Their direct context markedly differs. Section 1505 covers "*any* pending proceeding . . . before *any* department or agency." 18 U.S.C. § 1505 (emphases added). But § 751(a) speaks only of "proceedings *under the immigration laws*." 18 U.S.C. § 751(a) (emphasis added). The terms also differ in their broader context, showing up in differing statutory schemes. Section 1505 is one of the obstruction statutes, and the term "proceeding" appears in § 1505's "omnibus" provision, commanding a "broad[]" construction under Fourth Circuit precedent. *See United States v. Mitchell*, 877 F.2d 294, 298–300 (4th Cir. 1989) ("[A] narrow interpretation of § 1505 runs contrary to the well-established rule that the omnibus clauses of federal obstruction statutes should be broadly construed. . . . [S]everal

17

courts have addressed the issue of what is an administrative proceeding under the statute. These decisions have uniformly held that this term should be construed broadly to effectuate the statute's purposes." (citations omitted)). Not so with "proceeding[]" in § 751(a); the term appears in one entry in a self-contained, exclusive list of the qualifying bases triggering criminal liability for a person's escape from custody. *See* 18 U.S.C. § 751(a); *cf. N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 290 (2017) (articulating the limiting "interpretive canon, *expressio unius est exclusio alterius*," insofar as "expressing one item of [an] associated group or series excludes another left unmentioned" (alteration in original) (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002))). Also, because the relevant fourth basis in § 751(a) cabins the "proceedings" at issue to "proceedings under the immigration laws," to the extent the meaning of "proceedings" in § 751(a) is doubtful, "proceedings" should be read to mesh with the statutory scheme Congress has created "under the immigration laws." *See* 18 U.S.C. § 751(a); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 315–16 (2006) ("[U]nder the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read 'as if they were one law.'" (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972))).

For all of these reasons, the Court declines the Government's invitation to decide the instant § 751(a) "proceedings" question solely on the basis of this Court's prior interpretation of "proceeding" under § 1505. This Court's prior opinion interpreted a different statute, and that interpretation was ultimately tied to that statute's particular text and to the Fourth Circuit's apparent acquiescence to the trend of construing that text broadly. "To take [this Court's prior opinion] as establishing [a] categorical rule[] for th[e] term[]" "proceeding" across statutes in this instance "would . . . 'abandon the care [courts] have traditionally taken to construe such words in their particular statutory context.'" *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739,

754 (2023) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 585 (2010)).  The interpretative endeavor must, and does, begin afresh.

    2.  <u>Interpreting "Proceedings Under the Immigration Laws" in 18 U.S.C. § 751(a)</u>

The Court turns to interpreting 18 U.S.C. § 751(a).  Again, the dispute here is over what § 751(a) means when it says "proceedings under the immigration laws."  Mr. Zeledon says that "proceedings" in this context does not include the execution of a removal order.  The Court ultimately agrees.

In determining what § 751(a) means when it uses the term "proceedings," the Court begins with § 751(a)'s text.  *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) ("As always, an issue of statutory interpretation begins with the text.").  Section 751(a) refers to "proceedings *under the immigration laws*."  18 U.S.C. § 751(a) (emphasis added).  Section 751(a) thus textually tethers the meaning of "proceedings" to that which that phrase takes "under the immigration laws."  *Id.*; *see also United States v. Mbacke*, 2018 WL 3545499, at *10 (E.D.N.Y. July 20, 2018).  So, it makes sense to look at how Congress uses the term "proceedings" in "the immigration laws."

Title 8, Chapter 12 of the United States Code governs "Immigration and Nationality."  Chapter 12, Subchapter II more specifically governs "Immigration."  8 U.S.C. §§ 1151–1382.  Under these immigration laws, "proceedings" are governed by 8 U.S.C. § 1229a[8]—titled "Removal proceedings."[9]  Subsection (a) of § 1229a is titled "Proceeding."  Subsection (a)(1)

---

[8] There are also proceedings described in 8 U.S.C. § 1228, dealing specifically with "Expedited removal of [noncitizens] convicted of committing aggravated felonies."  But even those "proceedings" are generally "conducted in conformity with section 1229a . . . ."  8 U.S.C. § 1228(a)(1).

[9] This is the post-IIRIRA home for the old "exclusion" and "expulsion"/"deportation" proceedings.  *See* discussion *supra* Part IV.A.  As can be seen in some of the quotations in the paragraph accompanying this footnote, § 1229a in parts still reflects this dual nature of removal proceedings.  For example, § 1229a distinguishes between "inadmissibility or deportability," 8 U.S.C. § 1229a(a)(1), and between determining "admission" or post-admission "removal," *id.* § 1229a(a)(3), reflecting the traditional differences between "exclusion" and "expulsion"/ "deportation," respectively, *see Sale*, 509 U.S. at 175; *cf. Judulang*, 565 U.S. at 46.

empowers immigration judges to "conduct proceedings *for deciding* the inadmissibility or deportability of [a noncitizen]." *Id*. § 1229a(a)(1) (emphasis added).  Subsection (a)(3) provides, in relevant part, that "a proceeding under this section shall be the sole and exclusive procedure *for determining* whether [a noncitizen] may be admitted to the United States or, if the [noncitizen] has been so admitted, removed from the United States."  *Id*. § 1229a(a)(3) (emphasis added). Subsection (b) is titled "Conduct of proceeding" and describes the process followed in determining removability.  This includes:  how "[t]he proceeding may take place," including "in the absence of the [noncitizen]," as in Mr. Zeledon's case, *id*. § 1229a(b)(2); the "[noncitizen]'s rights in [the] proceeding" such as cross-examining Government witnesses, presenting evidence on their own behalf, and assurance that "a complete record shall be kept of all testimony and evidence produced at the proceeding," *id*. § 1229a(b)(4); and the consequences for a noncitizen's failure to appear at "a proceeding," *id*. § 1229a(b)(5)(A) ("Any [noncitizen] who . . . does not attend a proceeding under this section, shall be ordered removed in absentia, if the [government] establishes by clear, unequivocal, and convincing evidence that the written notice was [properly] provided and that the [noncitizen] is removable . . . .").  Subsection (c), as its title "Decision and burden of proof" suggests, addresses the burdens of proof and the appropriate evidence that inform the ultimate decision regarding removability.  *See id*. § 1229a(c).  And, § 1229a(c)(1)(A) explicitly provides that "*[a]t the conclusion of the proceeding* the immigration judge shall decide whether [a noncitizen] is removable from the United States," and that the "determination of the immigration judge shall be based only on the evidence produced *at the hearing*."  *Id*. § 1229a(c)(1)(A) (emphases added).  All in all, § 1229a uses the term "proceeding" to refer to proceedings under

that section 26 times,[10] and § 1229a uses the term exclusively to refer to the process, procedures, and hearings for making a determination about removability.  *See id.* § 1229a.

Reflecting DHS's own understanding of 8 U.S.C. § 1229a, DHS has promulgated 8 C.F.R. § 1241.1, titled "Final order of removal."  *Cf.* 8 U.S.C. § 1229a(c)(6)(b), (7)(C)(i) (referring to a "final administrative order of removal").  That regulation refers to "[a]n order of removal made by the immigration judge *at the conclusion of proceedings* under [8 U.S.C. § 1229a[11]]."  8 C.F.R. § 1241.1 (emphasis added).  Under the regulation, "[a]n order of removal . . . shall become final" if, among other things, "an immigration judge orders [a noncitizen] removed in the [noncitizen]'s absence," or *in absentia*, as happened in Mr. Zeledon's case.  *Id.* § 1241.1(e).  An *in absentia* removal order "become[s] final . . . immediately upon entry of such order."  *Id.*  Under § 1229a itself, a noncitizen may make a "motion to reopen proceedings," 8 U.S.C. § 1229a(c)(7)(A), and there are specific procedures set out for motions to reopen *in absentia* removal orders, *see id.* § 1229a(c)(7)(C)(iii); *id.* § 1229a(b)(5)(C).  Under the statute, the filing of a motion to reopen an *in absentia* removal order "stay[s] the removal of the [noncitizen] pending disposition of the motion by the immigration judge," but an appeal of an immigration judge's denial of such a motion to reopen does not.  *Id.* § 1229a(b)(5)(C); *see* 8 C.F.R. §§ 1003.2(f), 1003.23(b)(4)(ii); U.S. Department of Justice, Executive Office for Immigration Review, Immigration Court Practice Manual § 8.2(d)(1) (accessed July 26, 2024), https://www.justice.gov/eoir/reference-

---

[10] Section 1229a uses the term "proceeding" two other times in ways not strictly referring to proceedings under § 1229a.  Neither of these additional uses of the word upsets the Court's ultimate interpretative conclusion in this case.  First, § 1229a uses "proceedings" to refer to "proceedings conducted pursuant to section 1228" of title 18 of the United States Code.  8 U.S.C. § 1229a(a)(3).  As mentioned *supra* n.8, § 1228 governs the expedited removal of noncitizens convicted of committing aggravated felonies, and that section recognizes that its "proceedings shall be conducted in conformity with section 1229a of this title," generally.  *See* 8 U.S.C. § 1228(a).  Second, § 1229a uses "proceeding" to refer to "[o]fficial minutes of a court proceeding" when discussing what documents or records constitute proof of a criminal conviction in a § 1229a proceeding.  8 U.S.C. § 1229a(c)(3)(B)(iv).

[11] The regulation refers to § 1229a as numbered in the Immigration and Nationality Act—"section 240 of the Act."  8 C.F.R. § 1241.1.

materials/ic/chapter-8/2 [https://perma.cc/KZ6Z-HXFJ].  In Mr. Zeledon's case, he filed his

Emergency Motion to Reopen (based on a lack of notice, not on removability substance), which

the immigration judge denied, and though Mr. Zeledon still had time to appeal that denial, he had

not done so when he escaped from the CDF.  So, Mr. Zeledon cannot be said to have been in

custody "for" his motion to reopen or any pending appeal; he was purely in custody for the

execution of his final *in absentia* removal order.[12]

Title 8 U.S.C. § 1229a ("Removal proceedings") does not say anything about the removal

of a noncitizen after the determination of removability and the finalization of a removal order.  The

removal of a noncitizen pursuant to a removal order is instead governed by a different statute, 8

U.S.C. § 1231, titled "Detention and removal of [noncitizens] ordered removed."  Section 1231

reflects that when a noncitizen is ordered removed, and that removal order becomes final, the

noncitizen is in what is called the "removal period."  *See* 8 U.S.C. § 1231(a)(1).  Nothing in § 1231

suggests that this "removal period" is part of the "proceedings."  *See also Zadvydas v. Davis*, 533

U.S. 678, 683 (2001) ("The post-removal-period detention statute is one of a related set of statutes

and regulations that govern detention during and after removal proceedings.  While removal

---

[12] In this vein, the Government points to what it says is "another weakness in [Mr. Zeledon's] position given the facts of this case." Gov't's Resp. 7.  The Government asserts that if Mr. Zeledon "had not pursued a challenge to his removal order, ICE would have deported him to El Salvador on May 26, 2023." *Id.*  But, Mr. Zeledon's filing of his Emergency Motion to Reopen delayed his removal, and so "[t]he only reason [Mr. Zeledon] remained in custody on July 2, 2023—the day he escaped—was because he had pursued and received additional process from the Immigration Court." *Id.* at 8.  In the Government's view, "[t]hese facts further underscore that [Mr. Zeledon] was in custody 'for' immigration removal 'proceedings' on the day he escaped." *Id.*

For the reasons discussed in the paragraph accompanying this footnote, the Court cannot agree.  On the day that he escaped from the CDF, Mr. Zeledon's removal order was final, and his removal proceedings were closed.  When Mr. Zeledon filed his Emergency Motion to Reopen, Mr. Zeledon's removal order was statutorily stayed until the immigration judge ruled on that motion.  The immigration judge denied the Emergency Motion to Reopen on June 13, 2023, meaning that (regardless of whether Mr. Zeledon appealed that denial) DHS and ICE could, by statute, *immediately* remove Mr. Zeledon.  That DHS and ICE unilaterally chose to keep Mr. Zeledon in custody until July 12, 2023, awaiting removal does not mean that Mr. Zeledon was in custody for any reason other than the execution of his removal order.  Put differently, the Court rejects any contention by the Government that DHS's and ICE's decision to keep holding Mr. Zeledon longer than was strictly necessary qualifies as an independent "proceeding[] under the immigration laws" under § 751(a).

proceedings are in progress, most [noncitizens] may be released on bond or paroled.  After entry of a final removal order and during the 90–day removal period, however, [noncitizens] must be held in custody." (first citing 8 U.S.C. §§ 1226(a)(2), (c); and then citing 8 U.S.C. § 1231(a)(2))); *cf. Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018) (recounting prior precedent that "distinguished § 1226(c) from the statutory provision in *Zadvydas*"—§ 1231(a)(6)—"by pointing out that detention under § 1226(c) has 'a definite termination point':  the conclusion of removal proceedings" (citing *Demore v. Kim*, 538 U.S. 510, 529 (2003))).   Section 1231 refers to "proceedings" only four times:  three times in the phrase "proceedings under section 1229a," and once in the phrase "exclusion or deportation proceedings."  8 U.S.C. § 1231(b)(1)(A), (c)(1), (e)(1) ("under section 1229a"); *id.* § 1231(i)(3)(B)(ii) ("exclusion or deportation").  Not one of those references, or anything else in § 1231, at all intimates that the execution of a final removal order is among "proceedings," as the term is understood in the immigration laws.  *See id.* § 1231; *see also Mbacke*, 2018 WL 3545499, at *10 ("The removal of the [noncitizen]—the act of taking him out of the United States—is a separate event; not a part of his 'proceedings.'").

As the above reflects, the term "proceedings" is used "under the immigration laws," 18 U.S.C. § 751(a), only to refer to the process, procedures, and hearings that lead up to the ultimate decision about whether a noncitizen is removable.  *See* 8 U.S.C. § 1229a; *see also id.* § 1231.  If the noncitizen is determined to be removable, that process ultimately results in a final removal order.  *See id.* §§ 1229a, 1231.  But, the immigration laws do not use the term "proceedings" to refer to what comes after the ultimate decision of removability, the hearing where that final decision is made, and any issuance of a final order of removal.  *See id.* §§ 1229a, 1231; *see also Mbacke*, 2018 WL 3545499, at *9 ("After [a noncitizen's] status has been adjudicated—and he is ordered removed or deported and there are no more appeals—he is no longer in proceedings.").

As § 1229a states, "the immigration judge['s] . . . deci[sion]" of "whether [a noncitizen] is removable from the United States" is to be made "*[a]t the conclusion of the proceeding*" (and to "be based only on the evidence produced *at the hearing*"). 8 U.S.C. § 1229a(c)(1)(A) (emphases added). And § 1231, governing the removal of noncitizens ordered removed pursuant to final removal orders, does not suggest that it is governing "proceedings." *See id.* § 1231. Therefore, "under the immigration laws" and thus for purposes of 18 U.S.C. § 751(a), "proceedings" include the lead-up to and the issuance of a final removal order, but not the execution of a final removal order.

Notably, it is not as though this understanding of "proceedings" in § 751(a)—as referring only to the procedures and hearings leading up to a final decision of whether a noncitizen is to be removed—lacks any basis in any dictionary definition of the word "proceeding." One of Black's Law Dictionary's alternative, narrower definitions of the term is as follows: "4. The business conducted by a court or other official body; *a hearing.*" *Proceeding*, Black's Law Dictionary (12th ed. 2024) (emphasis added). A "hearing," in turn, is defined both as "[a] formal, scheduled setting in which an affected person presents arguments to a decision-maker" and as "[a] judicial session . . . held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying." *Hearing*, Black's Law Dictionary (12th ed. 2024). This looks much like the "proceedings" contemplated in 8 U.S.C. § 1229a—that is, like "proceedings under the immigration laws." 18 U.S.C. § 751(a). So understood, as the Court has explained, the execution of a final removal order is an after-effect of the actual "proceedings" (as the term is used in the immigration laws), and so being in custody just for the execution of such a removal order is not being in "custody . . . for . . . proceedings under the immigration laws." *Id.*

Of course, this is not the only way the word "proceeding" can be understood.  As the Government notes, there are broader definitions and understandings of the word "proceeding" that, facially, would cover the execution of a removal order.  *See* Gov't's Resp. 7.  The Court has found that such an understanding of "proceeding" is appropriate in the context of 18 U.S.C. § 1505, the obstruction statute under which Mr. Zeledon was charged in this case.  But, for all of the reasons that the Court has explained, the Government's proposed identical, broad understanding of "proceedings" in 18 U.S.C. § 751(a) is a reading that § 751(a)'s context cannot countenance.

The Court finds further support for its interpretation of "proceedings" in § 751(a) when it considers that interpretation against the backdrop of the overall statutory scheme Congress has created "under the immigration laws."  18 U.S.C. § 751(a).  Reading "proceedings" in § 751(a) to exclude the execution of a finalized removal order would not leave noncitizens free to escape from custody for the execution of their removal orders without any criminal ramifications "under the immigration laws."[13]  *See id.*  Congress has enacted another statute that covers an escape (or any other action) by a noncitizen that hampers the execution of a removal order against them, 8 U.S.C. § 1253.  At its broadest, § 1253—specifically titled "Penalties related to removal"—punishes "[a]ny [noncitizen] against whom a final order or removal is outstanding" who "takes any . . . action, designed to prevent or hamper or with the purpose of preventing or hampering the [noncitizen]'s departure pursuant to such."  8 U.S.C. § 1253(a)(1)(C).  Under § 1253, Congress made this crime a felony, with a typical statutory maximum term of imprisonment of four—but in some cases ten—years.  *Id.* § 1253(a)(1).  That is a much more serious penalty than that for

---

[13] Nor would this reading leave the phrase "custody or confinement . . . for . . . proceedings under the immigration laws" in § 751(a) without any practical work to do.  The immigration laws do not only permit the confinement of noncitizens that have already been ordered removed.  The immigration laws provide that "[a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States."  8 U.S.C. § 1226(a); *see also id.* § 1226(a)(2) (listing two ways the Attorney General "may release the [noncitizen]").

escaping from "custody . . . for exclusion or expulsion proceedings under the immigration laws" under 18 U.S.C. § 751(a), which is a misdemeanor offense with a statutory maximum sentence of one year.   That Congress has passed a statute aimed specifically at noncitizens hampering the execution of a final removal order (and has actually treated it as a more serious offense), gives the Court additional assurance that reading "proceedings" in 18 U.S.C. § 751(a) as it does here does not frustrate Congress's intent.

Based on the Court's review of text and context, and with an eye to the relevant overall statutory scheme, the Court concludes that the phrase "proceedings under the immigration laws" in 18 U.S.C. § 751(a) does not include the execution of a final order of removal.

## V.  CONCLUSION

The Government in this case charged Mr. Zeledon with two counts, under two statutes, 18 U.S.C. § 1505 and 18 U.S.C. § 751(a).   Both statutes refer to "proceedings."   In both counts, the Government has referred to (and, at trial, proved) the pendency of the same "proceeding": DHS and ICE executing a final order of removal against Mr. Zeledon.   As the Court has determined, §§ 1505 and 751(a) use the term "proceeding" differently.   Relevant here, text and context show that § 751(a) uses "proceedings" narrowly, in a way that does not encompass the execution of a removal order.   At trial, the Government proved only that, when Mr. Zeledon escaped from the CDF, Mr. Zeledon was in custody for the execution of a final removal order.   As such, the Government has failed to prove beyond a reasonable doubt that Mr. Zeledon's escape was covered by 18 U.S.C. § 751(a), that is, escape from "custody . . . for exclusion or expulsion [or removal] proceedings under the immigration laws," as charged in Count II.   Accordingly, Mr. Zeledon is guilty of violating 18 U.S.C. § 1505 (Count I), as determined at trial, but not 18 U.S.C. § 751(a) (Count II).

26

For these reasons, the Court will grant Mr. Zeledon's Motion for Judgment of Acquittal on Count II.

An appropriate Order shall issue.

_____ /s/ _RCY_ _____
Roderick C. Young
United States District Judge

Date: <u>August 1, 2024</u>
Richmond, Virginia